UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSHUA SNIDER,

          Plaintiff,                    Case No. 1:20-cv-1227

v.                                        Honorable Janet T. Neff

JOHN DAVIS et al.,

          Defendants.
_____/

**OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

       At the time that Plaintiff filed this action, she was incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which she complains occurred at that facility. Plaintiff sues Warden

John Davis, Assistant Deputy Warden Unknown Traier,[1] Assistant Deputy Warden Unknown Davis, Unknown Oversmith, Mental Health Unit Chief Unknown Maranka, Doctor Unknown Schmidt, Doctor David Huyge, Health Unit Manager LeBarr,[2] and Amie Gaskill.  Since filing this lawsuit, Plaintiff has been released from prison.

In Plaintiff's complaint, she alleges that she has been living as a transgender woman since the age of sixteen, and she was classified as such while at the MDOC reception center on March 11, 2016.  In January of 2019, Defendant Schmidt, who is a transgender specialist, prescribed Plaintiff hormone therapy.  On August 13, 2019, Plaintiff explained to Nurse Jane Doe that she had been on hormone therapy for eight months.  On August 16, 2020, Plaintiff experienced breast pain and noted lumps the size of marbles.  In August, September, and October of 2019, Plaintiff filed and wrote numerous health care kites to Defendants LeBarr, Gaskill, and Huyge, asking them to contact Defendant Schmidt.  Defendants LeBarr, Gaskill, and Huyge all refused.  As a result, Plaintiff suffered from anxiety, panic attacks, high blood pressure, depression, and weight loss.

On January 24, 2020, Plaintiff wrote a grievance on Defendants Lebarr, Gaskill, Huyge, and Schmidt, asserting that they were deliberately indifferent to Plaintiff's medical issues. In February and July of 2020, Plaintiff was seen by a doctor and a physician's assistant, who each noted the lumps in Plaintiff's breasts and told Plaintiff that her "T-block" or "T-blocker" level was higher than her hormone level, and that this was "very bad." (ECF No. 1, PageID.11.)  The medical providers informed Plaintiff that they would forward her medical chart to Defendant Schmidt.

---

[1] Also referred to as Traler in the body of Plaintiff's complaint.

[2] Also referred to as LeBarre in the body of Plaintiff's complaint.

On June 26, 2020, and July 27, 2020, Plaintiff kited Defendant Maranka, asking him to contact Defendant Schmidt. Defendant Maranka refused. As a result, Plaintiff suffered from anxiety, panic attacks, high blood pressure, depression, and weight loss. In September of 2020, Plaintiff told Defendant Huyge that she had been told by Defendants LeBarr and Gaskill that Defendant Schmidt was not seeing prisoners because of the COVID-19 pandemic. Defendant Huyge explained that Defendant Schmidt had to see prisoners but would be doing so over the "tel-a-screen." Plaintiff states that she was seen by R.N. Sikkema in September of 2020, who examined Plaintiff's breasts, noted the lumps, and said that he would send Plaintiff's chart to the doctor to be reviewed.

Between November 20, 2020, and December 7, 2020, Plaintiff wrote numerous kites to Defendants Gaskill, Lebarr, and Huyge, complaining of breast lumps and pain. Plaintiff stated that her chart had been sent to Defendant Huyge, but nothing had been done to address her medical issues. Plaintiff further complained that Defendant Schmidt was repeatedly informed of the lumps in Plaintiff's breasts and the elevated "T-blocker" level, but that Defendant Schmidt ignored the risk to Plaintiff's health. On November 30, 2020, Defendant Gaskill administered a COVID-19 test on Plaintiff and told her to stop writing kites. Defendant Gaskill said that she had Plaintiff's "number" and that she would make sure that Plaintiff went back to the "hole." (*Id.* at PageID.14.)

On November 30, 2020, Plaintiff wrote to Defendant Davis complaining about her medical issues. In December of 2020, Plaintiff spoke to Defendant Davis as she was making rounds. Defendant Davis told Plaintiff that she had received her kite and that there was nothing she could do for Plaintiff. Plaintiff suffered a panic attack.

3

On December 2, 2020, R.N. Moody examined Plaintiff's breasts and noted the lumps. R.N. Moody stated that she would forward Plaintiff's medical chart to Defendant Huyge for review. On December 5, 2020, R.N. Moody explained that she had been told by Defendant Lebarr that Defendant Schmidt was the only doctor in the state who medically treats gender dysphoric prisoners, and that Defendant Schmidt was seeing prisoners via tel-a-screen.

Plaintiff asserts that throughout this time period, Defendants Traier and Oversmith reviewed some of Plaintiff's grievances and letters and were aware of Plaintiff's ongoing health issues, as well as the refusal of medical staff to treat Plaintiff's condition.

Plaintiff states that Defendants violated her rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Respondeat superior

Plaintiff fails to make specific factual allegations against Defendants John Davis Traier, Oversmith, and Unknown Davis other than Plaintiff's claim that they failed to conduct an investigation in response to Plaintiff's complaints. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888

(6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants John Davis Traier, Oversmith, and Unknown Davis engaged in any active unconstitutional behavior. Accordingly, she fails to state a claim against them.

**IV.     Fourteenth Amendment**

Plaintiff makes a conclusory claim that Defendants violated her rights under the Fourteenth Amendment. Liberally construing the complaint, it appears that Plaintiff is asserting a violation of her substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process … serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale*

6

*v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning her medical claims. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion

7

of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claim will be dismissed.

## V.     Eighth Amendment

Plaintiff claims that she was subjected to cruel and unusual punishment in violation of her rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be

8

obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as

here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). She must demonstrate that the care she received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

"[T]he right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis").

As noted above, Plaintiff claims that Defendants Schmidt, Maranka, Huyge, LeBarr, and Gaskill denied her treatment when she developed lumps and pain in her breasts, and when her "T-block" or "T-blocker" level was higher than her hormone level. Plaintiff attaches copies of kite responses to her complaint as exhibits. A review of these documents shows that on July 27, 2020, Plaintiff kited requesting a meeting with the GID Doctor. Defendant Maranka responded by stating that health care had answered this query multiple times, but that he would pass Plaintiff's request on to health care. (ECF No. 1-1, PageID.46.)

On September 8, 2020, Plaintiff kited:

> ICF health care officials HUM LeBarre. Another GID prisoner told me that PA Huyge told them that Dr. Schmidt will be here October 2020. Also you and Gaskill keep refusing to email Dr. Schmidt you have knowledge of the serious risk I face an [sic] you have seen my lab draws [where] my T block levels higher [than] my

11

hormone levels and that very bad.  I ask you to email Dr. Schmidt so I can get my hormone levels or T block raised up and you['ve] been [lying] to me that Dr. Schmidt is not see[ing] no one cause of Covid 19 but Huyge told another GID something different.  But it's ok.  God don't like ugly and thanks for making me suffer when you all trained not to harm.

(*Id.* at PageID.43.)  Defendant Gaskill responded that LeBarre had already advised Plaintiff that she had emailed Dr. Schmidt, and that Dr. Schmidt was aware of Plaintiff's condition.  (*Id.*)

On September 14, 2020, Plaintiff kited requesting to see Defendant Schmidt and Defendant LeBarr responded that, as Plaintiff had already been told on numerous occasions, Defendant Schmidt was not seeing patients because of the COVID-19 pandemic.  Plaintiff was instructed to kite if she wanted to see a nurse.  (*Id.* at PageID.44.)  On October 1, 2020, R.N. Julie Fletcher responded to a kite by informing Plaintiff that Defendant Schmidt was not seeing GID inmates due to the pandemic, but that her labs were being monitored by ICF medical providers and that any changes to her medication would be determined by those providers.  (*Id.* at PageID.45.)

On November 21, 2020, Plaintiff kited to complain about pain in her broken finger, pain and lumps in her breast, and the fact that her T block level is higher than her hormone level.  (*Id.* at PageID.48.)  Defendant Gaskill responded to the kite on November 25, 2020, by stating that Plaintiff had been evaluated regarding her finger and that there was no indication that it was broken, but that an appointment was being made to reexamine the finger.  Defendant Gaskill also informed Plaintiff that Defendant LeBarr had emailed Defendant Schmidt over a month ago, and that Defendant Schmidt indicated she would review Plaintiff's chart.  Defendant Gaskill stated that she would let Defendant LeBarr know about Plaintiff's concerns and would check if Defendant LeBarr had heard back from Defendant Schmidt.  (*Id*.)

It is clear from the attachments to Plaintiff's complaint that her medical condition was being regularly monitored.  The fact that she was not scheduled to see Defendant Schmidt, or that specific actions were not taken as part of her treatment is not sufficient to show a violation of

12

the Eighth Amendment. Plaintiff has failed to allege that she suffered any harm as a result of her treatment while confined at ICF. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

### VI. Retaliation

Plaintiff makes a conclusory assertion that Defendants retaliated against her in violation of her First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he or she was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With the exception of Defendant Gaskill, Plaintiff fails to specifically allege that any of the named Defendants took any retaliatory actions against her. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As to Defendant Gaskill, Plaintiff alleges that on November 30, 2020, Defendant Gaskill administered a COVID-19 test on her and told her to stop writing kites. Defendant Gaskill said that she had Plaintiff's "number" and that she would make sure that Plaintiff went back to the "hole." (*Id.* at PageID.14.)

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.,*

13

*Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

In this case, Defendant Gaskill's alleged threat to have Plaintiff sent "back to the hole" was entirely vague and was unaccompanied by any actual conduct, such as the writing of a misconduct ticket or a Notice of Intent. The Court concludes that such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g., Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[—to 'get' a prisoner who files a grievance on Krause and 'steps out of line'—] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). Accordingly, Plaintiff's retaliation claims are properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  March 12, 2021                             /s/ Janet T. Neff
                                                                    Janet T. Neff
                                                                    United States District Judge